# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **MERLE L. ROYCE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 259 |
| | ) | |
| **MICHAEL R. NEEDLE, P.C.**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

It would not be particularly constructive, and hardly worth the effort, to seek to reconstruct here the convoluted history of the extraordinarily contentious proceedings to date in this action. Instead this memorandum opinion and order will focus on the most recent areas of dispute: motions for sanctions by counsel for plaintiff Merle Royce ("Royce," the plaintiff here) and counsel for the "Amari Group," who were 15 of the 16 plaintiffs in the underlying action whose settlement has provided the gravamen for this lawsuit.

On April 7, 2016 this Court directed the attached message to each active (and in this instance, one inactive) player in this litigation. On April 14 Michael Needle ("Needle"), both individually and on behalf of Michael R. Needle, P.C. ("Needle, P.C."), delivered a portion of his and its responses to this Court's chambers, explaining that the pressures of other matters necessitated a one-day delay in providing the rest of his and its responses. Then on April 15 the promised additional delivery was made.[1]

---

[1] This Court has also received a deficiency notice from the Clerk's Office stating that Needle and Needle, P.C. had not complied with the District Court's rule as to electronic filing of that April 15 document. Where as here those two combatants have been highly critical of
(continued)

As the April 15 response makes clear, in substantial part the litigants have crossed swords on what from this Court's perspective is a nonissue: the possible entry of a Fed. R. Civ. P. ("Rule") 55 default judgment against Needle, P.C. Because that entity had filed a still-extant responsive pleading at a time when it was represented by counsel who have since withdrawn from the case, so that Needle, P.C.'s nonparticipation since that time (although obstructionist in nature) cannot support a default <u>judgment</u>,[2] the current motions for default (Dkt. Nos. 245 and 247) are denied without prejudice.

That said, however, other aspects of the Needle and Needle, P.C. filings also call for some treatment here. This opinion will first address those aspects of the April 14 submission, then turn to the April 15 filing.

As for the former, it deals with a $600 sanction imposed on Needle, P.C. on October 19, 2015. What the transcript reveals is a delay caused by the foulup in the arrangements that Needle had set up for his own participation, causing the expenditure of an inordinate amount of time and an ultimate false start on the part of the other counsel who <u>were</u> in court for the then-pending motion. In a manner all too often present in Needle's submissions, his April 14

---

(footnote continued)
asserted rule noncompliance by others, they should be particularly meticulous in their own adherence to such requirements -- as Matthew 7:3 puts it:

> And why beholdest thou the mote that is in thy brother's eye, but considerest not the beam that is in thine own eye?

[2] That situation could be different if Needle, P.C.'s more recent tactics were to lead to a striking of its pleadings as a permissible sanction, but no such action has taken place (and it is hoped that any such step can be avoided). That however is not the entire story, for a party can also "default" in responding (or by failing to respond) to a motion that seeks interlocutory rather than final relief, and that can give rise to an enforceable order granting such relief. As the ensuing text demonstrates, that has indeed taken place here.

submission begins with this false bullet point that ascribes to this Court the proposed setup for the status hearing:

> The Court instructed Needle (via T. Buehler) to appear by joining a previously arranged call-in by Mr. Gamburg.

But instead, as paragraph 10 of Needle's own April 14 declaration then stated (as usual, on penalty of perjury):

> My assistant reports that Mr. Gamburg already had made arrangements to appear by phone. We suggested (and the court agreed) that Mr. Gamburg should call you and then conference in the court room at 312.582-1338. Since I don't have Gamburg's contact information at my finger tips, would you please clear this with him?

Needle then goes on to ascribe to this Court -- again without justification -- the problems that then ensued. But in the same way, none of the subsequent paragraphs of Needle's own sworn declaration place those problems on this Court's doorstep.

Under the circumstances, it is difficult to entertain Needle's current effort to unravel the six-month-old October 19, 2015 order in his favor. Hence his effort to urge "mea non culpa" is unpersuasive, and the Dkt. No. 253 and Dkt. No. 255 motions to award against Needle personally the $600 sanction specified in that order are granted.

To turn to the April 15 submission, this memorandum order has already concurred in Needle's objection to the issuance of a default judgment. But something must also be said about the assertions that Needle has chosen to add to his lengthy, authority-supported and successful opposition on the "default" front.

Unwilling (or perhaps unable) to acknowledge any fault on his own part, Needle repeatedly refers to this Court's criticism of various aspects of his conduct and his contentions as "harsh comments." But quite apart from the obvious truth that harshness, like beauty, may be in

- 3 -

the eye of the beholder, it seems to be vintage Needle to ascribe all of his difficulties (such as his asserted problems in locating substitute counsel willing to represent him and Needle, P.C.) to the asserted faults of others -- in this instance, to this Court and its criticism.

Thus it appears that Needle would prefer that this Court should speak of his demonstrably false pretense that he had received no notice of proceedings related to this Court's February 2 opinion in other terms -- perhaps as a "mistake" -- when the other counsel in the case had direct proof that after the Needle, P.C. counsel had withdrawn their representation so that there was no longer any address of record for service purposes, those other counsel had sent their fee petitions, their Proposed Order and notices of upcoming status hearings to him directly via e-mail.[3] This Court rejects the use of such a misleading euphemism -- a lie is a lie. Surprisingly, n.1 at page 1 of Needle's April 15 submission quotes this excerpt from this Court's March 28, 2016 memorandum opinion and order (Dkt. No. 244) in purported support of his position, although it demonstrates exactly the opposite:

> Needle, P.C.'s failure -- or at this point, it is more properly labeled a refusal -- to secure counsel serves no purpose but to impede the progress of this action on the merits, and indeed Needle has sought to hide behind it by pretending falsely that he received no notice of proceedings related to the February 2 Opinion.[7]

---

[7] When Needle, P.C.'s most recent counsel of record withdrew from representing that professional corporation, it no longer had a designated provision for electronic notice. But to put the direct lie to Needle's no-notice contention, Royce and the Amari Group have shown that they sent their fee petitions, the

---

[3] In like fashion, this Court has been compelled to take a leaf from counsel's book by communicating with Needle individually and with Needle, P.C. via the selfsame e-mail route:

mnjam@hotmail.com.

That must perforce be the means by which this opinion is transmitted to them.

Proposed Order and notices of upcoming status hearings to him directly via e-mail (Dkt. Nos. 226 at 2-3 and 228 at 2-3), and he has attempted to avoid the truth by suggesting that he had not received <u>proper</u> notice (Dkt. No. 225 ¶ 2). In like fashion, he now chides this Court as to the requirement that service must comply with Rule 77(d) (Response at 7). What irony, given the fact that it was Needle's own failure to provide Needle, P.C. with replacement counsel that has caused the claimed noncompliance on everyone's part.

No more need be said. This opinion turns to its brief conclusion.

## **Conclusion**

No useful purpose would appear to be served by an effort to encompass in abridged form what this opinion has already set out through appropriate analysis. Instead the effect of this opinion on the only four outstanding docket items will be stated in summary form: For the reasons set out in this memorandum opinion and order, the motions that constitute Dkt. Nos. 245 and 247 are denied without prejudice, and the motions set out in Dkt. Nos. 253 and 255 are granted.

Finally, to turn at long last to the purpose for which this action was initially brought, a status hearing is set for 8:45 a.m. April 25, 2016 to discuss further proceedings in the case, and (to avoid any further claimed confusion in this respect) Needle is ordered to appear in person at that hearing. If that early date, which has been chosen because of this Court's tight schedule, is inconvenient for any of the interested parties, they should communicate with each other to suggest an early alternative.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 19, 2016

In response to the just-received Motion for Miscellaneous Relief, Including Extension filed by Michael Needle ("Needle") both individually and on behalf of Michael R. Needle, P.C. ("Needle, P.C."), this Court's judicial assistant sought to place a telephone call to Needle at the phone number listed on the letterhead that accompanied the Motion, only to receive a recorded message that read, "I'm sorry, but the person you called has a voice mailbox that has not been set up 'yet.' Goodbye." Accordingly this message is being sent to Needle and to the other lawyers (except for Howard Roin) to whom earlier e-mails have been transmitted by this Court. In response to the Motion's questions:

1. Needle could certainly have participated telephonically if the status hearing had been held as scheduled. It may be added that it is frankly disingenuous for Needle to state in his letter that Dkt. No. 243 "does not state if Michael R. Needle is allowed or expected to appear at the April 8, 2016 status conference, whether individually, as the principal of Michael R. Needle PC or both." Minute entries such as that reflect a courtroom deputy's abbreviated treatment of a Judge's ruling, in this instance this Court's memorandum opinion and order (Dkt. No. 244) -- and it can only be concluded that Needle is being deliberately opaque in saying that the opinion did not make it crystal clear that Needle's participation in that status hearing (given his prior flouting of his responsibilities) was critical.

2. Because this Court is granting the Motion's request to file responses on or before April 14 to the several motions that have targeted both Needle individually and Needle, P.C., there is no need to hold the April 8 status hearing, thus sparing all counsel the time and expense that would have been required for that purpose. When Needle presents those responses on a timely basis, this Court will set a next status hearing date -- at which time Needle is ordered to attend in person.

Milton I. Shadur
Senior United States District Judge

ATTACHMENT