IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MERLE L. ROYCE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 259 |
| | ) | |
| **MICHAEL R. NEEDLE, P.C.**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Merle Royce ("Royce") brought this interpleader action to resolve numerous cross-cutting disputes among the victors in Amari Co. v. Burgess, Case No. 07 C 1425 (the "Amari litigation") and in related satellite cases over how to divvy up the spoils of a global settlement agreement (the "Recovery"). This Court then stayed proceedings as to the allocation of the Recovery among the plaintiffs in the Amari litigation (the "Amari plaintiffs") to permit this Court to deal first with some ultimately untenable positions that had been advanced by Michael Needle ("Needle") and his wholly-owned law firm Michael R. Needle, P.C. ("Needle, P.C.") as to the aggregate amount to be paid in attorneys' fees (Dkt. No. 94).

With that issue having been addressed and resolved by this Court, one of the Amari plaintiffs -- John Cardullo & Sons, Inc. ("Cardullo") -- has moved to lift that stay and to compel a distribution of the Recovery (Dkt. No. 299). In opposition to that motion, the other 15 Amari plaintiffs (the "Amari Parties") invoke an initial agreement (the "Agreement") that in part called for some potential disputes to be submitted to former U.S. Magistrate Judge John Cooley ("Cooley") for arbitration.

But Cooley died in 2009, an eventuality not contemplated at the time the Agreement was drafted by Needle with input from his original co-counsel in the underlying litigation. And although Cardullo's previous counsel had been working toward an accord with the Amari Parties to select a new arbitrator,[1] with new counsel came a new position, and Cardullo now argues that Cooley's death has rendered the arbitration clause unenforceable. Cardullo also contends that even were Cooley still available, the Amari plaintiffs' current dispute is not committed to arbitration -- the arbitrator was instead empowered, it avers, only to decide whether to uphold or deny detailed written objections that might be lodged against a proposed schedule for distributing the Recovery ("Schedule"), and there have been no such objections because no Schedule has been circulated. But that second ground for leaving the proper distribution of the Recovery with this Court is overly hypothetical so long as the effect of Cooley's death is unsettled.

Hence this Court responded to Cardullo's about-face by soliciting its and the Amari Parties' input as to what effect Cooley's death has on the agreement to arbitrate, apart from any question concerning whether that agreement actually committed their present disagreement to arbitration. That narrow question is now ripe for decision.

---

[1] This Court had anticipated that with the Royce-Needle dispute as to the total attorneys' fees payable out of the Recovery having been dealt with by its opinion on that subject, its role in the ascertainment and distribution of the portions of the Recovery to be shared among the 16 Amari plaintiffs would most likely be a modest one. It therefore initially encouraged counsel for the Amari Parties and counsel for Cardullo to seek an agreement as to a substitute for the originally-named Cooley, so that the entire aspect of this litigation dealing with the appropriate division of funds among the 16 Amari plaintiffs could go forward in accordance with the Agreement, but with an agreed-upon arbitrator to take the place of the designated but now deceased Cooley (after all, the 16 Amari plaintiffs had shared a common cause in the underlying lawsuit that had generated the Recovery). With that hopeful expectation by this Court having been defeated as explained in the ensuing text, the resulting contretemps has compelled the issuance of this opinion.

On that score both parties seek to call Green v. U.S. Cash Advance Ill., LLC, 724 F.3d 787 (7th Cir. 2013) to their aid -- quite astonishingly so on the part of Cardullo's new counsel, because when properly read that case directly cuts the legs out from under Cardullo's position. For while Cardullo appeals to Green primarily in the course of emphasizing that the intent of the parties is determinative of whether to compel arbitration (certainly an odd position for Cardullo to take, given both (1) that the parties in this case clearly had no mutual intent as to how to deal with the unimagined possibility now confronting them and (2) that Cardullo has just filed an objection to the Amari Parties' submissions evincing that lack of intent on their part), what our Court of Appeals was principally concerned with in Green was the reach of 9 U.S.C. § 5 ("Section 5"), the provision of the Federal Arbitration Act (the "Act") that requires a court to appoint an arbitrator "if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy."

In that respect what Green, 724 F.3d at 790-91 emphasized as to the application of that provision was that the parties' designation of a particular arbitral forum does not make the agreement to arbitrate dependent on the availability of that forum, so that taking that expressly designated forum out of the picture would somehow void the agreement to arbitrate. To the contrary, in our Court of Appeals' reliance on the Supreme Court's ruling in the Hall Street Assocs. case cited next in this opinion, Green, id. at 790 (citations omitted) said this in the context of the refusal of the National Arbitration Forum to hear new consumer cases, but standing for the proposition that an arbitration agreement will remain enforceable even though one of its express provisions may have been overtaken by an unforeseen event:

> Two courts of appeals have held that the identity of the Forum as arbitrator is not "integral" to arbitration agreements and § 5 may be used to appoint a substitute. The Supreme Court must have assumed this in CompuCredit Corp. v. Greenwood, -- U.S. --, 132 S. Ct. 665, 181 L. Ed. 2d 586 (2012), which held that

claims under the Credit Repair Organizations Act are arbitrable. The agreement in that case specified use of the Forum, see id. at 677 n.2 (Ginsburg, J., dissenting), yet the Court saw no obstacle to enforcing the arbitration clause.

And even more to the point in the present context, Green, id. at 791 specifically opined that the approach adopted in some other circuits[2] -- under which Section 5 would not mandate the appointment of a substitute if the identity of the specified arbitrator was "integral" to the arbitration agreement -- was at odds with Congress' clear intent "that a judge can appoint an arbitrator when for 'any' reason something has gone wrong."

As Green, id. reasoned, Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008) had been quite clear that courts were not to add to or depart from the standards of the Act, and "[a]n 'integral part' proviso to § 5 sounds like the sort of addendum that Hall Street forbids." On the contrary, setting aside an arbitration agreement because of the arbitrator's unavailability could be done -- if at all, a prospect about which the court expressed skepticism -- only on general contract principles such as mutual mistake about his or her future availability (id. at 791-92) or unconscionability (Jackson v. Payday Financial, LLC, 764 F.3d 765, 777-78 (7th Cir. 2014)). And while both Green and the cases it criticized for introducing an "integral part" proviso dealt with the specification of a forum (which would then name the particular arbitrators), there is no principled reason for not applying its logic when what is at issue is a named individual.

Cardullo's memorandum (Dkt. No. 358) at 7 (quoted verbatim) instead seeks to argue that Green, 724 F.3d at 791:

---

[2] Green, 724 F.3d at 790 identifies Khan v. Dell, Inc. 669 F.3d 350, 354-56 (3d Cir. 2012), Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1236 n.13 (11th Cir. 2012), Ranzy v. Tijernia, 393 Fed. Appx. 174 (5th Cir. 2010), Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1222 (11th Cir. 2000) and In re Salomon Inc. Shareholders' Derivative Lit. 91 Civ. 5500 (RRP), 68 F.3d 554 (2d Cir. 1995). Illinois also selectively enforces Section 5 depending on whether the designation of a particular forum was "integral" to the arbitration agreement (Carr v. Gateway, Inc., 241 Ill. 2d 15, 26-27, 944 N.E.2d 327, 333 (2011)), but as an interpretation of federal law that decision is not binding on this Court.

appeared to acknowledge that it would not be appropriate "[t]o use §5 to appoint a substitute arbitrator [where that] would . . . defeat . . . the contractual choice," including where the arbitration agreement designated an "'exclusive' private adjudicator."

But that attempt is really troubling, for the language that Cardullo's counsel quotes is instead Green's summary of the Second Circuit's reasoning in Salomon -- reasoning that Green, 724 F.3d at 791 expressly rejected for the reasons just given. Indeed, whereas Salomon, 68 F.3d at 558-59 found an exclusive choice of forum in language that required arbitration in accordance with a designated forum's rules, Green, 724 F.3d at 789 held that similar language providing for arbitration in accordance with a forum's rules did not designate a forum at all, before the court pivoted to reject the contention that an agreement's express designation of a forum would block the application of Section 5.[3] So Green's discussion of the holding in Salomon is in no way indicative of the law in this circuit -- quite the contrary is true.

Thus the facts that the Agreement designated Cooley by name and that his unanticipated death has made his service as arbitrator impossible have no impact on the enforceability of the parties' arbitration agreement. Because no method for selecting a replacement is provided for in that agreement, Section 5 empowers -- indeed requires -- this Court to select one regardless of why Cooley in particular was originally chosen.

In a vain effort to evade that conclusion, Cardullo argues that there was no "lapse in the naming of an arbitrator" or "in filling a vacancy" because Cooley was named, so that the position assertedly died with him, leaving no vacancy. But if that argument were to prevail Section 5

---

[3] This is not to suggest that Green never permits parties to prevent the designation of an arbitrator under Section 5. They could do so by providing specifically that the agreement to arbitrate is void if a designated forum or the designated arbitrator is unavailable, for example. Green rather teaches that the bare nomination of a forum in an arbitration agreement will not block the appointment of a substitute if Section 5's conditions are satisfied, and this Court holds that what has happened in this case calls for an analogous result.

could never be used to provide an arbitrator where an agreement designated one. Cardullo's reading erases the statutory distinction between a "lapse in the naming of an arbitrator" and a "lapse . . . in filling a vacancy." Indeed, its contention that Cooley was chosen precisely because he was not fungible boils down to the argument that his being the arbitrator was "integral" to the arbitration agreement. No, a vacancy does exist within the meaning of Section 5, and that statute affords this Court no discretion in the event of such a vacancy.

In sum, the parties' agreement to arbitrate survives their named arbitrator. What remains then are (1) the identity of the arbitrator to act in Cooley's stead and (2) whether any issues that might need to be decided in the course of ruling on Cardullo's motion to compel a distribution of the Recovery have been committed to arbitration.

As to the first of those matters, this Court would of course welcome the input of counsel for all of the Amari plaintiffs on that subject. This opinion will conclude with the designation of an appropriate status hearing date to discuss that and other subjects.

As for the second of those matters, the same status hearing can address that subject as well. And on that subject it is also unclear whether Cardullo is asserting that the failure to circulate a Schedule means simply that the distribution of the Recovery is not yet ripe for arbitration or that such failure instead takes the distribution issue outside of the arbitration agreement entirely. But the better stance from a procedural perspective for addressing both of those questions would appear to be on an Amari Parties motion to compel arbitration.

Finally, because this Court is not in a position to compel a distribution of the Recovery at present, Cardullo's motion (Dkt. No. 299) is denied as to that issue without prejudice. But to permit the Amari Parties the opportunity to file a motion to compel arbitration if they choose to do so, this Court grants the portion of Cardullo's motion requesting that the stay on proceedings

as to the allocation of the Recovery be lifted.  And lastly, the earlier-mentioned status hearing is set for 8:45 a.m. on August 18, 2016.

                                              _____
                                              Milton I. Shadur
                                              Senior United States District Judge

Date:  August 1, 2016