IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MERLE L. ROYCE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 259 |
| | ) | |
| **MICHAEL R. NEEDLE, P.C.**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

It was apparent from the very beginning of this action that this multiparty multi-issue lawsuit would pose a good many complexities. But unfortunately it quickly developed that those anticipated complexities were increased exponentially, in large part because of the pattern of obstructionism engaged in by one of the participants, Philadelphia lawyer Michael Needle ("Needle").[1]

Matters came to a head last Thursday, September 15, when a previously scheduled status hearing intended to address some, and to schedule others, of the substantial group of contested motions that had been presented during the past few months (over and above other motions that this Court had resolved during the same time frame) had been frustrated by Needle's having preferred -- not for the first time -- to pursue his own agenda in generating work product on suit-related matters, rather than complying with the court-ordered timetable that would have

---

[1] Because Needle conducts his law practice through his wholly-owned professional corporation Michael R. Needle P.C. ("Needle P.C."), that entity rather than Needle individually is the first defendant named in this action. As will be seen, Needle has employed that distinction in creating some of the major unwarranted complexities in the litigation.

given other counsel and this Court the intended opportunity to review his input in advance of the hearing. This opinion is intended to memorialize, in more ordered form, the oral rulings that this Court made during the lengthy September 15 status hearing.

Before that path is undertaken, however, an important background explanation is in order. As already indicated in n.1, many of the problems that have been created here stem from the fact that Needle and Needle, P.C. are two legal entities. As is his right, Needle has chosen to operate his law business through the P.C., of which he is the sole member and its president, rather than as a sole practitioner. That should have been a constructive factor here, because both Needle and plaintiff Merle Royce ("Royce," who conducts his law practice as an individual) will necessarily will be major witnesses in phases of this litigation, and such considerations as the lawyer-witness rule and potential conflicts of interest[2] really require each to be represented by counsel rather than self-represented. Royce has had counsel representing him from the beginning of this case, and so did Needle P.C. initially -- but as will be explained later, when the original counsel for Needle P.C. withdrew because of irreconcilable differences with Needle, and when that firm's successor counsel also withdrew after an extremely brief tenure, Needle individually failed to fill the resulting gap for several months earlier this year, effectively shutting down the ability of the lawsuit to proceed in a realistic manner.

Now to the task of recounting the several pending motions and how this Court was compelled to deal with them in the difficult situation fueled by Needle's latest obstructionist

---

[2] For example, 16 other parties defendant to this action were the plaintiffs in the underlying RICO litigation that, through success via settlement, has spawned the issues presented in this action, while Needle, P.C. and Royce represented them in that litigation. Now major issues in this action, importantly including (for example) the extent to which the lawyers and their former clients will share in the $4.2 million proceeds of settlement in the RICO case, have clearly placed them at odds.

tactic. Because there is no particularly logical sequence for treating the several motions, they will simply be taken up in the order that this Court's notes and the transcript of the September 15 proceedings suggest.

Royce's motion to impose certain sanctions against Needle individually has the oldest docket number (Dkt. No. 288). Because Royce's counsel views other aspects of Needle's conduct as also calling for an award of attorney fees (see Dkt. No. 387), Needle has now been granted until September 29 to file a response to the new motion, so that his previously filed Dkt. No. 346 response and the new filing will speak to the entire issue.

Next, Royce's Dkt. Nos. 365 and 367 motions (both filed back on July 22, 2016) respectively seek to strike certain affirmative defenses and to dismiss certain counts of the counterclaim included in Needle P.C.'s most recent pleading, one that Needle and his P.C. refer to as the Second Amended Answer, Affirmative Defenses and Counterclaims (see Dkt. No. 382, which Needle represents to be an unredacted refiling of the pleading filed back on October 16, 2015 as Dkt. No. 179). Dkt. Nos. 365 and 367 are the principal motions to which this Court and the movants should have received responses by September 7 (the date set by this Court's July 29 order), in ample time for a thoughtful review before the September 15 status hearing.

Instead Needle waited until the September 7 due date to move for an extension of time to respond to those motions (Dkt. No. 385), then amended even that motion on September 12 (Dkt. No. 389). Under the circumstances this Court was of course compelled to grant the Needle P.C. Dkt. No. 389 motion orally at the September 15 hearing and was consequently required to grant Royce's counsel until October 11 to reply to Needle P.C.'s belated responses (Dkt. Nos. 392 and 396), each of which was filed on September 13, with copies not having been delivered to this

Court's chambers until September 14 -- literally the day before the hearing that had been set in late July.[3]

Before this opinion returns to the remaining matters of substance, just a few words might be said about another motion that was included in the docket printout that this Court had obtained in preparation for the September 15 session: Dkt. No. 370, in which counsel for the Amari Group (comprising 15 of the 16 plaintiffs in the underlying RICO litigation) asked to correct the record of the July 7, 2016 status hearing during which that counsel had made a mistake in one of his oral statements. To the astonishment of this Court, Needle -- who it will be remembered professed to be too busy to comply with the court-set timetable for his responses -- found some time to prepare and file a written objection to that motion because he argued that counsel's oral acknowledgement of the error (part of the transcript, which is not of itself a component of the written record in the case) would suffice, so that the moving counsel's motion was allegedly ill-considered. Only when this Court remarked on the lack of useful purpose

---

[3] What purpose would have been served by denying Needle and his P.C. the requested extension? And that rhetorical question remains, despite the obvious falsehood of this assertion made by Needle on behalf of his P.C. in the Dkt. No. 385 motion for extension:

> An extension until September 12, 2016 will not delay or hinder the status conference set by Dkt. 376 for 9:00 a.m. on September 15.

Not so -- after all, if the extension had nominally been denied this Court would not have received the Needle P.C. response on time in any event. And because a postponement of the scheduled September 15 status hearing would have disrupted this Court's preset schedulings in other cases on its own docket, as well as disrupting any corresponding plans of the other counsel in the case (not to mention the difficulties posed by attempting a multiple-party resetting of the date), this Court really had to adhere to the long-scheduled September 15 date even though it was not possible to address the Needle P.C. filings as had been the plan. It may be worth noting (though ruefully) that Needle himself, who was ensconced in Philadelphia and participating telephonically, would have been the least discommoded by any rescheduling.

served by further cluttering up the written record with such a response did Needle recede by orally withdrawing his previously-filed response (Dkt. No. 383).

To return to matters of far greater moment in this litigation, just two days before the September 15 hearing Royce's counsel, obviously frustrated by Needle's conduct in the case -- particularly the freeze caused by his several-month failure to obtain counsel for Needle P.C. until this Court most reluctantly granted him leave to do so personally pro hac vice (despite the fact that doing so created obvious problems, some of which have already been adverted to in this opinion) -- filed a well-thought-out and well-presented "Motion To Compel Needle P.C. To Obtain New Counsel and To Report in Writing on Efforts To Obtain New Counsel" (Dkt. No. 394).

It would serve no useful purpose for this Court to repeat the powerful and entirely accurate presentation in that motion, which this opinion simply adopts. Instead it is worth repeating the brief oral statement that this Court made near the beginning of the September 15 status hearing, a statement that decried the imposition of monetary sanctions as an unsatisfactory device for altering lawyer conduct in the respects needed here:

> Imposition of sanctions is far from my goal in the litigation process. As with the distinction that is well-known to exist between civil and criminal contempt, I have always hoped that if sanctions have to be imposed, the consequence would be to induce a change in conduct rather than serving as punishment for past conduct.

Here the nature of Needle's irresponsible behavior cannot be permitted to paralyze this litigation and thus to keep it from reaching the merits as to all the parties to this litigation, including Needle and his P.C., who stand to receive the major part of the $1.4 million that this Court's earlier rulings have held to be the lawyers' share of the $4.2 million settlement of the underlying litigation. In that respect it is most troubling that when this Court was called on

earlier to assess a substantial financial burden on Needle through the payment of attorneys' fees incurred because of improper conduct on his part, that imposition has regrettably had no impact on his continued obstructionist conduct. That being so, it is plain that some other approach must be devised to serve a coercive purpose as to Needle's future conduct, rather than simply considering financial impositions alone.

## **Conclusion**

To begin with two items that need no further explanation, the motions in Dkt. Nos. 370 and 389[4] are granted. More substantively, for the reasons and on the bases set out in this opinion, and after full deliberation, this Court orders:

1. As stated at the beginning of this opinion's discussion of the various motions, Needle is directed to respond to Royce's Dkt. No. 387 motion on or before September 29, 2016.

2. Because of the inappropriateness of Needle's conduct during the limited period since he was granted pro hac vice status, that status is revoked.

3. With that done, Royce's Dkt. No. 394 motion is granted, and Needle and Needle P.C. are ordered to obtain responsible new counsel to represent Needle P.C. in this action on or before October 17, 2016.

4. Needle P.C.'s Second Amended Answer, Affirmative Defenses and Counterclaims and all earlier versions of that pleading submitted in response to the Complaint in this action are stricken without prejudice.

---

[4] Relatedly, that last grant causes superseded Dkt. No. 385 to be denied as moot.

5. Because Royce's Dkt. Nos. 365 and 367 motions have targeted portions of the now-stricken Needle, P.C. pleadings, those Royce motions are denied without prejudice, but solely on mootness grounds and without any expression of views as to their substantive merit.[5]

6. In light of the orders in Paragraphs 4 and 5, the September 13 responses to Royce's now-mooted Dkt. Nos. 365 and 367 (those responses comprise Dkt. Nos. 392 and 396) are also stricken without prejudice.

7. This action is set for a next status hearing at 8:45 a.m. October 25, 2016, at which time the newly-obtained counsel for Needle P.C. is expected to attend. Before the October 25 date that new counsel is ordered to seek to inform himself or herself to the greatest extent possible in the limited frame available for that purpose. It is this Court's intention that the new counsel should give prompt consideration to what portions of the now-stricken pleadings by Needle P.C. can properly be considered for

---

[5] This Court will retain its chambers copies of those motions and their supporting memoranda (Dkt. Nos. 366 and 368). If and to the extent that the counsel to be retained by Needle, P.C. in compliance with this opinion were to determine that any of the contentions in the now-stricken Needle, P.C. pleadings should be reasserted as passing muster under Fed. R. Civ. P. ("Rule") 11(b), Royce's counsel would be entitled to reassert the corresponding contentions in Dkt. Nos. 365 through 368 via incorporation by reference rather than having to rewrite them anew.

reassertion in compliance with the objective and subjective good faith demanded by Rule 11(b).[6]

_____
Milton I. Shadur
Senior United States District Judge

Date: September 19, 2016

---

[6] It should be made plain that this opinion does not at all derogate from the force of the arguments previously made by counsel for Royce in the Dkt. No. 365 motion to strike and the Dkt. No. 367 motion to dismiss various aspects of Needle's then-existent responsive pleading. New counsel for Needle P.C. will be expected to give serious consideration to the contentions advanced there, as this Court assuredly will.